UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALLIED PACIFIC FOOD (DALIAN) CO., LTD.,<br>  888 Yongzheng Industrial Area, Sanli<br>  Jinzhou District, Dalian 116100<br>  China,<br><br>           Plaintiff,<br><br>      vs.<br><br>UNITED STATES OF AMERICA, c/o<br>  Office of the United States Attorney for<br>  the District of Columbia,<br>  555 4th Street, N.W.,<br>  Washington, D.C. 20530,<br><br>           Defendant. | C.A. No. _____ |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Benjamin L. England (D.C. Bar No. 486194)    Daniel G. Jarcho (D.C. Bar No. 391837)
John F. Johnson III                                            MCKENNA LONG & ALDRIDGE LLP
BENJAMIN L. ENGLAND &                            1900 K Street, N.W.
  ASSOCIATES, LLC                                         Washington, DC 20006
810 Landmark Drive, Suite 126                     202-496-7382
Glen Burnie, MD 21061
410-220-2800

*Attorneys for Plaintiff Allied Pacific Food (Dalian) Co., Ltd.*

Plaintiff, Allied Pacific Food (Dalian) Co., Ltd. ("Allied Pacific"), brings this action for judicial review of rules, implemented by the United States Food and Drug Administration ("FDA"), that restrict importation into the United States of Allied Pacific's wholesome frozen breaded shrimp. Allied Pacific is a secondary seafood processor, located in China, that processes aquacultured shrimp grown and harvested by other companies that are located both in China and in other countries. Under rules challenged here, FDA prohibits some companies from importing aquacultured shrimp that are grown and harvested in China until the importer can provide proof that the shrimp have no residues of animal drugs that FDA has not approved. FDA is imposing these restrictions on Allied Pacific's shrimp products without regard to the country where the shrimp were grown and harvested. FDA also is imposing the restrictions notwithstanding the fact that FDA has no evidence whatsoever that Allied Pacific's products, grown and harvested in China, have ever contained residues of unapproved animal drugs. In addition, FDA is imposing these restrictions even though Allied Pacific has presented to FDA undisputed scientific proof that there have been no unapproved animal drug residues on any of its most recent 73 consecutive shipments of aquacultured shrimp, regardless of the country in which they were grown and harvested. FDA has no evidence that even remotely suggests that current imports of Allied Pacific's shrimp contain, or appear to contain, residues of unapproved animal drugs. The Court should issue a declaratory judgment holding that FDA's import restrictions on Allied Pacific's aquacultured shrimp are unlawful and issue a permanent injunction setting aside the restrictions.

## Jurisdiction and Venue

1. This Court has jurisdiction over this case under 28 U.S.C. § 1331, to provide remedies set forth in 5 U.S.C. § 706 and 28 U.S.C. § 2201.

2. Venue is proper in this District under 28 U.S.C. § 1391(e).

**Parties**

3.  Plaintiff Allied Pacific exports large quantities of aquacultured frozen breaded shrimp from China to the United States, in hundreds of containers each year. Allied Pacific is a Chinese secondary processor and exporter of aquaculture shrimp products. Allied Pacific currently obtains approximately eighty percent of its raw aquaculture shrimp from farms outside of China. Allied Pacific obtains the remaining twenty percent of its raw aquaculture shrimp from an affiliated raw aquaculture shrimp supplier within China. Allied Pacific extensively inspects and tests the raw frozen shrimp that it receives from its suppliers. Once Allied Pacific inspects all shrimp for safety and quality, including tests for unapproved animal drugs, Allied Pacific processes the raw aquaculture shrimp to produce its finished, breaded frozen shrimp product. Allied Pacific examines all of its finished products once again for safety and quality, verifying that the processed product is free from any unapproved animal drugs. Only after Allied Pacific completes these tests and finds no unapproved animal drugs does Allied Pacific export the product to the United States.

4.  Defendant United States of America is named as a defendant pursuant to 5 U.S.C. §§ 702-703, because this is an action for judicial review of actions and inactions of an agency of the United States (FDA) that have affected Plaintiff adversely.

**Statutory and Regulatory Background**

5.  The Federal Food, Drug, and Cosmetic Act ("FFDCA") gives FDA authority to collect, and conduct an "examination" of, samples of food offered for import into the United States. 21 U.S.C. § 381(a). FDA has authority under the FFDCA to refuse admission of imported food into domestic commerce if it "appears from the examination of . . . samples or otherwise" that the food is adulterated. Food is adulterated, among other things, if it bears or

contains an animal drug that must be, but has not been, approved by FDA. 21 U.S.C. §§ 342(a)(2)(C)(ii), 360b(a)(1).

6.  FDA has promulgated regulations implementing its authority to refuse admission of imported food. If it appears that an import entry may be subject to refusal of admission, FDA gives the owner or consignee notice and an opportunity to present testimony at an informal administrative hearing in which the owner or consignee can dispute the threatened refusal. 21 C.F.R. § 1.94(a). Following the hearing, if FDA determines that it still appears that the statutory criteria have been met, the Agency issues a "notice of refusal." The FDA refusal prompts U.S. Customs and Border Protection to demand redelivery of the imported food, so that Customs can ensure its export or destruction as required by the FFDCA. Alternatively, if the owner or consignee overcomes the appearance of the charged violation, FDA issues a "notice of release" that permits the food to enter domestic commerce.

7.  FDA also has adopted rules for Detention Without Physical Examination, an agency action commonly referred to as "automatic detention" (which is a moniker initially coined by FDA). Under Detention Without Physical Examination, FDA automatically "detains" food offered for import without examining or sampling it and requires the importer to hold the food until the owner or consignee provides evidence to FDA that the food meets the statutory criteria for release. These rules, which require the owner or consignee to prove to FDA that imported food is not violative and should be released, do not appear in the FFDCA or in FDA's regulations published in the Code of Federal Regulations. Instead, the rules are stated in internal agency documents such as the FDA Regulatory Procedures Manual.

8.  FDA imposes Detention Without Physical Examination by issuing an Import Alert describing specific foreign shippers, manufacturers, products and/or countries of origin for

which imports will be subject to automatic detention and potential refusal. FDA has established two types of Import Alerts. Under one, FDA will only automatically detain a shipment when it has evidence that the product from a particular firm has a history of non-compliance (these alerts are commonly known as a "Red List"). Under the other, FDA will automatically detain a shipment of a specified product from a particular country or region unless the firm exporting the product is exempted from the alert. This second type of Import Alert (commonly known as a "country-wide" or "worldwide" Import Alert) applies to firms even if they have no history of non-compliance with FDA regulations.

9. An Import Alert uniformly imposes automatic Detention Without Physical Examination rules on all imports of products that meet the criteria stated on the Import Alert. Under an Import Alert, FDA refuses admission into domestic commerce of every imported shipment of products covered by the Alert unless the owner or consignee submits the evidence dictated by the Import Alert. FDA reviews the submitted evidence and decides whether to release the shipments into domestic commerce. This Detention Without Physical Examination status for the affected companies, products and/or countries/regions continues indefinitely for all import shipments of products covered by the Alert until FDA decides to remove the companies and products from the Import Alert.

### FDA's Creation and Implementation of Import Alert #16-131

10. Aquaculture is a method of seafood production in which people manage the production, raising and harvesting of seafood in controlled environments such as tanks, ponds and offshore cages. In order to increase the seafood yield, some aquaculture farms apply antibiotics and other animal drugs to the seafood, to prevent disease in the seafood prior to harvest.

11. In June 2007, FDA promulgated country-wide Import Alert #16-131. This alert is a rule, and final agency action, that requires the automatic Detention Without Physical Examination of five species of Chinese aquacultured seafood (including shrimp) due to the apparent presence of residues of animal drugs not approved by FDA. Import Alert #16-131 subjects to import refusal all imported aquacultured shrimp grown and harvested in China unless the importer proves that a specific shipment does not contain unapproved animal drugs (by conducting private laboratory analysis and submitting the analysis to FDA). This process continues unless and until FDA expressly exempts the firm from the Import Alert rule by adding the firm to a "Green List" published as part of the Import Alert.

12. FDA promulgated Import Alert #16-131 after testing samples of Chinese origin, farm-raised shrimp between October 2006 and May 2007. FDA determined that use of unapproved animal drugs in aquaculture operations raised significant health concerns. FDA found that 25% of the seafood sampled from Chinese aquaculture farms contained residues of unapproved animal drugs. On information and belief, none of the samples tested were processed by Allied Pacific. On information and belief, FDA has never tested a sample of Chinese origin, farm-raised shrimp processed by Allied Pacific and found any unapproved animal drug residue.

13. Based on the 2006-2007 survey results from firms other than Allied Pacific, FDA promulgated the country-wide Import Alert #16-131 to apply to all farm-raised shrimp aquacultured in China (as well as Chinese aquacultured basa, catfish, dace, and eel). FDA explained in publicly released documents that it promulgated this rule to control species of Chinese farmed-raised seafood from entering the United States.

14. FDA established regulatory criteria in the Import Alert that an exporter must satisfy in order for the exporter's products to be exempted from that rule. First, FDA must

release five consecutive shipments after receiving and reviewing third party private laboratory analysis of samples taken from each. Second, the facility must establish that it is in compliance with all Chinese government requirements for exporting. Third, the facility must have been inspected by "an appropriate third party." This inspection by an appropriate third party must conclude that the processing of the Chinese aquaculture shrimp complies with FDA's hazard analysis and critical control points ("HACCP") regulations, particularly as they relate to unapproved animal drugs.

15. FDA currently asserts that there is no entity recognized by FDA as an "appropriate third party." This assertion runs directly contrary to the terms stated in the Import Alert, which names China's General Administration of Quality Supervision, Inspection and Quarantine ("AQSIQ") as example of an appropriate third party. Yet FDA does not recognize AQSIQ as an appropriate third party to conduct an acceptable inspection. Furthermore, FDA has indicated that it does not even recognize, as an appropriate third party, the Foreign Seafood Inspection program of the U.S. Department of Commerce, National Oceanic and Atmospheric Administration ("NOAA"). There is no "appropriate third party."

### FDA's Imposition of Import Alert #16-124

16. FDA also has promulgated Import Alert #16-124 to cover cases in which FDA determines that seafood aquacultured in countries other than China appears to be contaminated with unapproved animal drugs. This Import Alert includes a Red List, which identifies the specific companies and products that are subject to FDA's automatic Detention Without Physical Examination. Pursuant to Import Alert #16-124, FDA subjects a listed foreign firm's product to automatic Detention Without Physical Examination only if FDA has previously tested and found unapproved animal drug in imported product from that firm.

17. For a foreign firm to obtain removal from Import Alert #16-124, FDA has established criteria less demanding than the criteria necessary to obtain an exemption from Import Alert #16-131. FDA will remove a foreign firm from Import Alert #16-124 if the firm (1) identifies the cause of the contamination; (2) designs and implements an appropriate corrective action; and (3) demonstrates effectiveness of the corrective action by presenting to FDA at importation third-party laboratory analysis to justify release of five consecutive shipments.

### Allied Pacific's Green List Exemption from Import Alert #16-131

18. At the time FDA issued country-wide Import Alert #16-131, FDA subjected Allied Pacific's shrimp to automatic Detention Without Physical Examination. From January 2008 until October 2008, FDA automatically detained 97 of Allied Pacific's shipments. After requiring, receiving and reviewing private laboratory analyses proving that these 97 shipments were free of unapproved animal drugs, FDA released all of the shipments into domestic commerce. In October 2008, FDA exempted Allied Pacific from Import Alert #16-131 by placing it on the Green List of Import Alert #16-131. FDA implemented this exemption only after the agency required and conducted an inspection of Allied Pacific in China.

19. On information and belief, FDA listed Allied Pacific on the Green List of Import Alert #16-131 because of the 97 clean shipments, and because of exhaustive procedures that Allied Pacific employs to ensure that its Chinese-sourced shrimp does not contain unapproved animal drug residues. Allied Pacific obtains its Chinese-sourced shrimp from a different but affiliated company. Allied Pacific (1) obtains a written guarantee from that supplier certifying that each shipment does not contain unapproved animal drugs; (2) periodically audits the supplier's facility; (3) internally tests the raw material shrimp for unapproved animal drugs;

(4) collects a sample and has a third party laboratory test the raw material shrimp for unapproved animal drugs; and (5) internally tests the finished product.

20. Because of the Green List exemption, from October 2008 until June 2013, FDA ceased automatically detaining Allied Pacific's shipments. During that same period, FDA randomly sampled and tested 19 shipments of Allied Pacific's aquaculture shrimp products, found no unapproved animal drug residues, and released all of the shipments into domestic commerce.

### FDA's Testing of Allied Pacific Shrimp Aquacultured in India

21. In May of 2013, FDA sampled and tested samples of shrimp from a single Allied Pacific shipment offered for import into the United States. The shrimp at issue were aquacultured in India and offered for import by Allied Pacific under Customs entry number AQZ-0330040-0. FDA found samples of the Indian shrimp that tested positive for small levels of AOZ, a metabolite of nitrofurans (which is an antibiotic used in, among other things, shrimp aquaculture). FDA has not approved the use of nitrofurans in aquaculture shrimp. Based solely upon these test results, FDA revoked Allied Pacific's Green List exemption from Import Alert #16-131. Thereafter and continuing to the present, FDA automatically Detains Without Physical Examination every shipment exported by Allied Pacific.

22. Allied Pacific immediately investigated the problem to determine the source of the drug residue. Allied Pacific determined that the contaminated shrimp came from a supplier that had grown and harvested the shrimp in India. Allied Pacific immediately ceased purchasing from the Indian supplier. In addition, as a precautionary measure, Allied Pacific ceased purchasing shrimp from all Indian suppliers. Allied Pacific committed to not purchase aquaculture shrimp from India until the firm obtained additional assurances that the shrimp would not contain unapproved animal drugs.

23.     In addition, Allied Pacific strengthened its screening procedures to verify that its foreign raw shrimp (i.e. aquacultured outside of China) does not contain unapproved animal drugs.  Allied Pacific's foreign raised shrimp undergoes six checks to verify that the raw material shrimp is free of unapproved animal drugs:  (1) the supplier of the raw material shrimp tests the product to confirm that it does not contain unapproved animal drug residues; (2) the China Inspection & Quarantine Service samples and tests in the imported raw material shrimp for unapproved animal drug residues; (3) Allied Pacific tests the raw material shrimp; (4) Allied Pacific collects a sample and has a third party laboratory test the raw material shrimp; (5) Allied Pacific internally tests the finished product; and (6) Allied Pacific collects a sample and has a third party laboratory test the finished product.  Allied Pacific only exports processed shrimp to the United States after it has passed all these tests.

24.     Since FDA has revoked Allied Pacific's Green List exemption from Import Alert #16-131, FDA has automatically detained all of Allied Pacific's shipments.  Following their detention, all of these shipments have been tested by a third party laboratory in the United States, which has found all of them to be free of unapproved animal drugs.  FDA has released into domestic commerce every such shipment for which the agency has completed its review of the laboratory reports.  To date, 73 consecutive shipments have tested negative for unapproved animal drugs and have been released into domestic commerce by FDA.

### Allied Pacific's Petition Regarding Import Alert #16-131

25.     On October 25, 2013, Allied Pacific filed a petition with FDA's Division of Import Operations requesting that FDA reinstate Allied Pacific to the Green List exemption from Import Alert #16-131 and cease automatically detaining Allied Pacific's shipments.  The petition documented Allied Pacific's investigation and corrective actions and its extensive history of importing clean, unadulterated aquaculture shrimp.  Furthermore, in the petition Allied Pacific

9

documented for FDA that the product FDA tested and found to contain AOZ was obtained from an Indian raw material supplier, and that the product was not Chinese aquacultured shrimp. As a result, FDA lacked evidence justifying revoking the Green List exemption to Import Alert #16-131, which only applies to Chinese raised aquaculture shrimp.

26. The Import Alert petition argued that FDA had failed to follow its own Import Alert rules. Under those rules, FDA's discovery of unapproved animal drug residues on the single shipment of Indian-sourced aquaculture shrimp should have led FDA to list Allied Pacific on Import Alert #16-124, which covers aquaculture shrimp raised in countries other than China. To be removed from Import Alert #16-124, a listed firm need only provide evidence of an investigation identifying the cause of the contamination, evidence that corrective actions that were taken to resolve the problem and remove any appearance that future shipments may be contaminated, and ship five consecutive shipments of clean, unadulterated shrimp. In the petition, Allied Pacific requested FDA to move Allied Pacific onto Import Alert #16-124 and then, based upon the evidence submitted, remove the firm immediately from that Alert. In addition, Allied Pacific requested FDA to restore the firm onto the Green List of Import Alert #16-131 to prevent its improper application to Allied Pacific's shipments.

27. On November 27, 2013, Allied Pacific supplemented its original petition by providing additional evidence about Allied Pacific's compliant shipment history.

28. FDA has informed Allied Pacific that the relief requested in its petition will not be granted. FDA has stated that it will continue to apply Detention Without Physical Examination under Import Alert #16-131 regardless of the country where the shrimp was farmed and harvested.

29. In continuing to apply Import Alert #16-131 to Allied Pacific, FDA has requested further information from Allied Pacific, and has requested to inspect Allied Pacific's plant, before considering exempting Allied Pacific from that Import Alert. On information and belief, this continued application of Import Alert #16-131 will lead to many more weeks or months of delay before FDA might reinstate Allied Pacific's Green List exemption. On information and belief, FDA's request for additional information and an inspection, and the associated delay, would not have occurred if FDA had properly applied Import Alert #16-124, instead of Import Alert #16-131, to Allied Pacific following discovery of unapproved animal drug residues on the Indian shrimp. On information and belief, if FDA had properly applied Import Alert #16-124, Allied Pacific's shrimp products would not currently be subject to automatic Detention Without Physical Examination.

### The Harm Faced by Allied Pacific From the Import Alert

30. FDA's Detention Without Physical Examination of Allied Pacific's quality frozen breaded shrimp concretely and adversely affects Allied Pacific's ability to export that food to the United States.

31. For each such shipment, Allied Pacific must work with its customer to obtain private laboratory testing to demonstrate that the imported shrimp does not contain unapproved animal drugs. The private laboratory test report must be reviewed by FDA, and this step alone at times takes up to two months to complete. The entire process of importation, automatic detention, sampling and testing by private third parties, submission to and review by FDA of third party analytical test results, and release of the shipment takes several months to complete and thereby delays delivering the goods.

32.     The automatic detention process also places a financial burden on Allied Pacific. Not only must Allied Pacific pay the testing costs in the United States, it must also pay to store the product for several months until FDA releases the product.

33.     The automatic detention process is severely straining Allied Pacific's relationships with its customers.  These customers have expressed intent to seek alternative suppliers unless FDA ceases automatically detaining Allied Pacific's imported shrimp, because they cannot continue to absorb the delays in delivery caused by FDA's Import Alert.

## COUNT I

### (Agency Action Without Observance of Procedure Required by Law)

34.     Plaintiff hereby incorporates by reference each and every allegation set forth in paragraphs 1 through 33.

35.     Import Alert #16-131 is a final agency action and also is a legislative rule, among other things, because as applied by FDA, it imposes uniform prospective substantive legal limitations on the importation of food that did not exist before that action was taken.

36.     5 U.S.C. § 553 requires that FDA either must follow notice and comment procedures, or publish written findings establishing good cause that notice and comment procedures were impracticable, unnecessary, or contrary to the public interest, before imposing a legislative rule such as Import Alert #16-131.  FDA violated 5 U.S.C. § 553 because it neither followed notice and comment procedures nor published such findings.  Because of this violation of 5 U.S.C. § 553, FDA's imposition of Import Alert #16-131 constitutes final agency action "without observance of procedure required by law" within the meaning of 5 U.S.C. § 706(2)(D).

37.     Under 5 U.S.C. § 706(2)(D), this Court should hold unlawful and set aside Import Alert #16-131.

38.     Under 28 U.S.C. § 2201, this Court should declare that Import Alert #16-131 is an unlawful and invalid final agency action because it was issued in violation of the procedures required by 5 U.S.C. § 553.

## COUNT II

### (Arbitrary and Capricious Agency Action – Continued Automatic Detention Runs Contrary to the Evidence Before the Agency)

39.     Plaintiff hereby incorporates by reference each and every allegation set forth in paragraphs 1 through 33.

40.     FDA's imposition of Import Alert #16-131 on Allied Pacific's shipments, by revoking the firm's Green List exemption from that Import Alert rule, is an arbitrary and capricious final agency action within the meaning of 5 U.S.C. § 706(2)(A).  Among other things, this action revoking the Green List exemption to the rule (1) is not rationally connected to the evidence before FDA; (2) is based upon a clear error of judgment; and (3) has not adequately taken into account evidence that does not support Detention Without Physical Examination.

41.     FDA revoked Allied Pacific's Green List exemption based solely on FDA's test results from one shipment, imported under Customs entry number AQZ-0330040-0.

42.     FDA's continued automatic detention of Allied Pacific's shipments is not supported by the evidence before FDA.  That evidence includes (1) Allied Pacific's investigation and substantive corrective actions and (2) Allied Pacific's history of exporting compliant shrimp before being added to the Green List in 2008, during the period when Allied Pacific enjoyed Green List status, and since being removed from the Green List.  Since the one violative shipment involving Indian shrimp, FDA has released 73 consecutive shipments proven to be free of unapproved animal drug residues.  This history, counting only from the date FDA removed Allied Pacific from the Green List, represents a number of clean, consecutive shipments that is

approximately 15 times greater than the number required by the Green List criteria stated on Import Alert #16-131.

43.     Under 5 U.S.C. § 706(2)(A), this Court should hold unlawful and set aside FDA's action revoking Allied Pacific's Green List exemption from Import Alert #16-131.  The Court should issue a permanent injunction requiring FDA to place Allied Pacific on the Green List of Import Alert #16-131.

44.     Under 28 U.S.C. § 2201, this Court should declare that FDA's action revoking Allied Pacific's Green List exemption from Import Alert #16-131 is an arbitrary and capricious, unlawful and invalid final agency action.

## COUNT III

### (Arbitrary and Capricious Agency Action – Irrational Revocation of Green List Exemption From Import Alert #16-131)

45.     Plaintiff hereby incorporates by reference each and every allegation set forth in paragraphs 1 through 33.

46.     FDA's imposition of Import Alert #16-131 on Allied Pacific's shipments, by revoking the firm's Green List exemption from that Import Alert rule, is an arbitrary and capricious final agency action within the meaning of 5 U.S.C. § 706(2)(A).  Among other things, this action revoking the Green List exemption to the rule (1) is not rationally connected to the evidence before FDA; (2) is based upon a clear error of judgment; and (3) has not adequately taken into account evidence that does not support Detention Without Physical Examination.

47.     FDA implemented Import Alert #16-131 based on a survey of Chinese seafood firms that did not include Allied Pacific.  The Import Alert applies solely to seafood aquacultured in China.  Assuming *arguendo* that FDA lawfully implemented Import Alert #16-131 without following notice and comment procedures, FDA properly exempted Allied Pacific from that

14

Import Alert in 2008 by listing the firm on the Green List. The Green List exemption was based upon direct evidence, including from an FDA inspection, establishing that Allied Pacific's Chinese aquaculture shrimp products did not appear to be adulterated by unapproved animal drug residues.

48. In 2013, FDA acted arbitrarily and capriciously by revoking Allied Pacific's Green List exemption from the Import Alert. That final agency action, which imposes automatic Detention Without Physical Examination and therefore has the direct and concrete effect of restricting importation of Allied Pacific shrimp into the United States, was not supported by any evidence that Allied Pacific shrimp aquacultured in China contains, or ever has contained, unapproved animal drug residues. On information and belief, FDA has no evidence whatsoever that Allied Pacific shrimp aquacultured in China, offered for import into the United States, has ever contained unapproved animal drug residues.

49. Under 5 U.S.C. § 706(2)(A), this Court should hold unlawful and set aside FDA's action revoking Allied Pacific's Green List exemption from Import Alert #16-131. The Court should issue a permanent injunction requiring FDA to place Allied Pacific on the Green List of Import Alert #16-131.

50. Under 28 U.S.C. § 2201, this Court should declare that FDA's action revoking Allied Pacific's Green List exemption from Import Alert #16-131 is an arbitrary and capricious, unlawful and invalid final agency action.

## COUNT IV

**(Arbitrary and Capricious Agency Action – Agency's Failure to Follow its Own Rules)**

51. Plaintiff hereby incorporates by reference each and every allegation set forth in paragraphs 1 through 33.

52. Assuming *arguendo* that FDA lawfully implemented Import Alert #16-124 without following notice and comment procedures, FDA's discovery of unapproved animal drug residues on the single shipment of Indian-sourced aquaculture shrimp should have led FDA to list Allied Pacific on Import Alert #16-124 instead of revoking Allied Pacific's Green List exemption from Import Alert #16-131 (which applies to Chinese-sourced aquaculture shrimp).

53. If FDA had done so, Allied Pacific's shrimp products would not currently be subject to Detention Without Physical Examination, because Allied Pacific has satisfied all of the criteria for removal from Import Alert #16-124.

54. Because FDA has not followed its own Import Alert rules, Allied Pacific is subject to continuing agency delay in removing Detention Without Physical Examination restrictions on shrimp products that the firm exports to the United States. This delay would not have occurred if FDA had properly applied Import Alert #16-124, instead of Import Alert #16-131, to Allied Pacific following discovery of unapproved animal drug residues on the Indian shrimp.

55. FDA has acted arbitrarily and capriciously by failing to follow its own Import Alert rules. In failing to follow its own rules, FDA has directly and concretely harmed Allied Pacific by applying Detention Without Physical Examination restrictions in a manner inconsistent with its rules.

56. Under 5 U.S.C. § 706(2)(A), this Court should hold unlawful and set aside FDA's imposition of either Import Alert #16-124 or Import Alert #16-131 as a Detention Without Physical Examination restriction on importation of Allied Pacific aquacultured shrimp.

57.     Under 28 U.S.C. § 2201, this Court should declare that neither Import Alert #16-124 nor Import Alert #16-131 imposes any lawful restriction, through Detention Without Physical Examination, on importation of Allied Pacific aquacultured shrimp.

### **Prayer for Relief**

Plaintiff respectfully requests the Court to grant the following relief:

I.     Set aside Import Alerts #16-124 and 16-131 as described above;

II.    Permanently enjoin FDA from effectuating Import Alerts #16-124 and 16-131 as restrictions on any pending or future shipments of aquaculture shrimp exported by Allied Pacific;

III.   Issue a declaratory judgment declaring that Import Alerts #16-124 and 16-131 are unlawful to the extent that they restrict importation of Allied Pacific aquacultured shrimp; and

IV.    Award such other relief as this Court deems just and proper.

Respectfully submitted,

/s/
Benjamin L. England (D.C. Bar No. 486194)
/s/
John F. Johnson III
BENJAMIN L. ENGLAND &
   ASSOCIATES, LLC
810 Landmark Drive, Suite 126
Glen Burnie, MD 21061
410-220-2800

/s/
Daniel G. Jarcho (D.C. Bar No. 391837)
MCKENNA LONG & ALDRIDGE LLP
1900 K Street, N.W.
Washington, DC 20006
202-496-7382

*Attorneys for Plaintiff Allied Pacific Food (Dalian) Co., Ltd.*

February 4, 2014